PUBLISH

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

No. 97-6823

D.C. Docket No. 96-0502-AH-M

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
12/14/98
THOMAS K. KAHN
CLERK

IN RE: THOMAS MILTON HAAS,
    BERNICE ELIZABETH HAAS,

Debtors.

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

THOMAS MILTON HAAS and
BERNICE ELIZABETH HAAS,
a.k.a. Betsy M. Haas,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Alabama

(December 14, 1998)

Before EDMONDSON and BIRCH, Circuit Judges, and MORAN*, Senior District Judge.

_____

*Honorable James B. Moran, Senior U.S. District Judge for the Northern District of Illinois, sitting by designation.

1

**MORAN, Senior District Judge:**

The Internal Revenue Service attacks a bankruptcy plan of reorganization. The issue is one of characterization. The IRS contends that the plan impermissibly reclassifies the status of tax obligations and that the plan is, in any event, not feasible and not proposed in good faith. The appellees claim that the plan permissibly allocates priority of payments and is also feasible and in good faith. Because we agree that the plan impermissibly reclassifies the status of tax obligations and that proper classification clearly results in an infeasible plan, we reverse and remand.

Thomas A. Haas was, at the time of the appeal, 68 years old. He is an attorney who is a sole practitioner. His wife is employed full-time in her husband's law office providing secretarial and clerical assistance. They did not pay their taxes over a rather extended period and, on the eve of the involuntary sale of their home to pay tax liabilities, they filed a joint Chapter 11 bankruptcy petition. We will hereafter refer to them as the debtors, while recognizing that in some instances the circumstances apply only to Thomas.

The debtors owed the IRS $685,000[1] in income and employment taxes, virtually all of which was secured by notices of federal tax lien, when they filed their petition in 1991. Of that amount, $617,000 was for income taxes and $68,000 was for employment taxes. Employment taxes (also referred to as trust fund taxes) refer to taxes the debtors were supposed to withhold for income taxes and social security, the employer's share of social security taxes and unemployment taxes owed by an employer. At the time of the petition the debtors had assets with a value of $259,000. During the pendency of the bankruptcy the debtors were required

---

[1]For convenience, we will refer to pertinent amounts in round numbers, although the actual amounts are slightly different.

to pay $1,651 per month into a debtor-in-possession account, to be applied to the secured claims. As of October 16, 1995, that account had a balance of $64,000. In addition, $7,600 in pre-petition accounts receivable were collected and held in a separate account. Therefore, $71,600 is available to satisfy claims, in addition to the $259,000 in bankruptcy estate assets.

There are, generally speaking, three types of claims in bankruptcy: (1) secured claims, (2) priority unsecured claims, and (3) general (non-priority) unsecured claims. Section 506(a) of the Bankruptcy Code, 11 U.S.C. § 506(a) (1993), provides that claims secured by liens on property of the bankruptcy estate are secured claims only to the extent of the value of the collateral, here $259,000, and any amount in excess of that is an unsecured claim. Employment taxes are, however, priority claims. 11 U.S.C. § 507(a)(8)(C) (1993). Under 26 U.S.C.A (I.R.C. 1954) § 7501(a), they are considered to be in a special fund in trust for the United States. Those claims are non-dischargeable, 11 U.S.C. § 523(a) (1993), and a plan can be confirmed only if it provides for full payment over a period not exceeding six years. 11 U.S.C. § 1129(a)(9)(C) (1993). In addition, the plan must be feasible, 11 U.S.C. § 1129(a)(11) (1993), and proposed in good faith, 11 U.S.C. § 1129(a)(3) (1993).

The plan here was preceded by two appeals. *In re* Haas, 31 F.3d 1081 (11th Cir. 1994), *cert. denied sub nom.* Regions Bank of Louisiana v. Internal Revenue Service, 515 U.S. 1142 (1995), we determined that the federal tax liens had first priority over a mortgage lien on debtors' residence. *In re* Haas, 48 F.3d 1153 (11th Cir. 1995), we held that the debtors' income tax debts were dischargeable.

The plan adopted by the bankruptcy court reflected those decisions. It provided that the $68,000 employment tax liability be paid in full from the $71,600 in the two special accounts. It provided further, however, that it be treated as a secured claim, thus reducing

3

the amount of income taxes treated as a secured claim from $259,000 in estate assets to $191,000. The balance of the income tax liability is treated as an unsecured claim. The secured claims are to be paid from Thomas Haas' income as an attorney over a 30-year period, with interest at 8%, in monthly installments of $1,345.72. The unsecured IRS claims of $500,000 are to be paid at $500 per quarter over five years, an approximately 2% return without interest.

The debtors claim that the immediate payment of the trust fund tax debt from the available accounts is an allocation of payments well within the equitable discretion of the bankruptcy court. They rely upon United States v. Energy Resources Co., Inc., 495 U.S. 545, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990). That reliance is misplaced. In Energy Resources the Court held that the trustee in bankruptcy could direct that initial payments under a reorganization plan be used to extinguish trust fund tax debt. But there the plan provided for the payment of all tax liabilities, both trust fund and non-trust fund tax debt. The allocation reduced the likelihood that the IRS could collect trust fund tax debt from other responsible persons if the plan failed, because that obligation would be extinguished to the extent it was paid. The trust fund tax claim was, however, treated as a priority unsecured claim. There was, moreover, no reason to believe that the plan would fail, and the IRS, in all likelihood, would recover the entire tax liability. Here, in contrast, the plan itself provides for only nominal recovery of unsecured tax claims. By treating the trust fund tax debt as a secured claim, rather than as a priority unsecured claim, the plan reduces the recovery by the IRS by $68,000. By ignoring the priority status of the trust fund tax claim the plan has, in effect, adjusted the priority of the claim, and this it cannot do. *In re* Preferred Door Co., Inc., 990 F.2d 547, 550 (10th Cir. 1993); *In re* Bates, 974 F.2d 1234, 1235 (10th Cir. 1992). If we adopted

4

**the debtors' approach in this case we would essentially be ruling that when a creditor takes a lien to secure debt which Congress has classified as priority, the creditor has forfeited the protection Congress has specifically assigned to that debt to the extent the debt exceeds the value of the property subject to the security interest. Thus, to the extent the debt is under-secured, the creditor receives less protection than Congress intended.[2] The plan, therefore, cannot be confirmed.**

**The IRS also claims that the plan is not feasible and was not proposed in good faith. It notes that the plan contemplates that a 68-year-old attorney will continue in the active practice of law for another 30 years, and it contends that such a plan does not offer "a reasonable assurance of success." Kane v. Johns-Manville Corp., 843 F.2d 636, 649 (2d Cir. 1988)**. Perhaps a bankruptcy court can entertain a somewhat greater risk of plan failure if, as here, the creditor, in the event of plan failure, has the protection of a pre-petition security interest. That protection, however, does not make a plan feasible if it does not, by its own terms, have a reasonable assurance of success. The plan itself must offer a reasonable prospect of success and be workable. *In re* Monnier Bros., 755 F.2d 1336, 1341 (8th Cir. 1985). As the bankruptcy court itself recognized, Thomas Haas "cannot be expected to practice law on a full-time basis for another 30 years." That alone dooms the plan as infeasible. With a recognition of the trust fund tax claim as a priority unsecured claim, the likelihood that no plan can provide a reasonable assurance of success substantially increases.

The decision of the district court confirming the plan is REVERSED and we REMAND for further consideration in light of this opinion.

---

[2]**If the value of the collateral had been less than $68,000, treatment of the priority claim as a secured claim would, apparently, lead to a discharge of a portion of the priority claim, a result expressly prohibited by the statute.**