William Ray **MILLER,** Appellant,

v.

**CIGNA INSURANCE COMPANY,**
**et al., Appellees.**

No. CIV. WDQ–04–215.
Bankruptcy No. 00–6–1758–JS.

United States District Court,
D. Maryland,
Northern Division.

June 17, 2004.

James R. Schraf, Lipshultz and Hone Chtd., Silver Spring, MD, for Appellant and Debtor.

Stephen F. Fruin, Carol Lynn Hoshall, Whiteford, Taylor and Preston LLP, Baltimore, MD, for Appellees.

Charles Goldstein, Baltimore, MD, pro se.

## MEMORANDUM OPINION AND ORDER

QUARLES, District Judge.

On January 11, 2001, the Court of Appeals of Maryland held that William Ray Miller breached his fiduciary duty to Cigna Insurance Company ("Cigna") by: (1) failing to collect and forward insurance premi-

ums to Cigna, though he was contractually obligated to do so; (2) failing to convey to Cigna his knowledge that the premiums at issue were being diverted from Cigna for the use of Miller's employer; and (3) obtaining premium financing for an insurance premium of a Cigna insured but using the funds to pay other expenses. *Insurance Company of North America v. Miller*, 362 Md. 361, 387, 765 A.2d 587 (2001). On May 21, 2001, pursuant to the ruling of the Court of Appeals, the Circuit Court for Baltimore County entered a judgment against Miller for breach of fiduciary duty and negligence in the amount of $784,595.20.

Miller subsequently filed for chapter 7 bankruptcy protection. Cigna filed an adversary proceeding against Miller in the United States Bankruptcy Court for the District of Maryland ("bankruptcy court"), asking the court to declare Miller's judgment debt nondischargeable. Because the Court of Appeals of Maryland had heard and determined the issues presented in the bankruptcy controversy, the bankruptcy court adopted its findings under the doctrine of collateral estoppel. On December 30, 2003, the bankruptcy court held that Miller's debt to Cigna was nondischargeable in bankruptcy.

Pending is Miller's appeal of the bankruptcy court's determination that his judgment debt to Cigna is nondischargeable. For the reasons discussed below, the decision of the bankruptcy court will be affirmed.

## STANDARD OF REVIEW

■ The district court reviews the bankruptcy court's findings of fact for clear error and conclusions of law de novo. *Nesse v. IRS of the United States*, 305 B.R. 645, 647 (D.Md.2004) (*citing Canal Corp. v. Finnman*, 960 F.2d 396, 399 (4th Cir.1992); *Travelers Ins. Co. v. Bryson*

*Prop., XVIII*, 961 F.2d 496, 499 (4th Cir. 1992)).

## BACKGROUND

The Court of Appeals made the following findings of fact, which were adopted by the bankruptcy court:

The Hickman Agency's [(Miller's employer)] cash flow management plan involved agents, including [Miller], obtaining an insurance policy for a customer and setting up an installment payment plan for the premium due with the insurance company. The agent would not always inform the insured of the installment plan. At the same time, the agent, in this case [Miller], would obtain financing of the same premium amount for the insured through a premium financing company.

Generally, the premium financing company would pay the full amount of the premium to the Hickman Agency, with the expectation that the full amount would be paid directly to the insurance company. However, under the scheme utilized by the Hickman Agency and known to appellee, the full amount received from the premium financing company was not immediately paid over to insurance companies, including [Cigna]. Instead, the Hickman Agency would deposit the premium payment into its own bank account, and only pay the insurance company the amount of the "installment" that the insurance company believed, as a result of information furnished by the agency, was due. The insured's premiums would generally be used to repay the premium financing company over a period of time. Apparently, neither the insureds, nor the premium financing companies, nor the insurer were aware of the scheme.

The money that improperly remained with the Hickman Agency was moved

with [Miller]'s knowledge and sometimes with his active participation out of the trust account and was apparently used to pay other expenses within the Hickman Agency. This was true for premiums paid to the Hickman Agency on [Cigna] accounts as well as accounts of other insurance companies. In other words, the premiums were held "out-of-trust." By depositing the full amount of the insured's premium advanced by the premium financing company (or the insured) into its own bank account, the Hickman Agency had the benefit of having the money (or part of it) for its own use from the time the money was received until the money was needed to pay installments to the insurance company.

*Ins. Co.*, 362 Md. at 367–68, 765 A.2d 587 (footnotes omitted).

## ANALYSIS

Miller argues that the bankruptcy court erred in finding that his judgment debt was nondischargeable under 11 U.S.C. § 523(a)(2)(A), (a)(4), and (a)(6).

### A. 11 U.S.C. § 523(a)(2)(A)

■ 11 U.S.C. § 523(a)(2)(A) excepts from discharge debts "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud." To show that a debt is nondischargeable under this section, a plaintiff must prove four elements: "(1) a fraudulent misrepresentation; (2) that induces another to act or refrain from acting; (3) causing harm to the plaintiff; and (4) the plaintiff's justifiable reliance on the misrepresentation." *Foley & Lardner v. Biondo (In re Biondo)*, 180 F.3d 126, 134 (4th Cir.1999).

■ Miller stipulated that he was Cigna's appointed agent. *Ins. Co.*, 362

Md. at 372, 765 A.2d 587. "One of the primary obligations of an agent to his or her principal is to disclose any information the principal reasonably may want to know." *Id.* at 380, 765 A.2d 587. Miller, however, failed to disclose the double financing scheme to Cigna even though he was aware of, and actively participating in it. *Id.* at 381, 765 A.2d 587. A debtor's silence regarding such information can constitute a false misrepresentation actionable under 11 U.S.C. § 523(a)(2)(A). *Wolstein v. Docteroff (In re Docteroff)*, 133 F.3d 210, 216 (3d Cir.1997); *Citibank (S.D.), N.A. v. Eashai (In re Eashai)*, 87 F.3d 1082, 1089 (9th Cir.1996); *Caspers v. Van Horne (In re Van Horne)*, 823 F.2d 1285, 1288 (8th Cir.1987).

■ Cigna testified that had it "known of the double financing scheme, it would not have permitted it 'because a policy would never be put on installments if it was known to be premium financed.'" *Ins. Co.*, 362 Md. at 369, 765 A.2d 587 (*quoting* testimony of Suzanne DiSanti, Cigna financial coordinator). Having relied upon Miller's representations, Cigna sustained substantial damages. *Id.* at 372, 765 A.2d 587. As Miller was Cigna's fiduciary, Cigna was justified in relying upon his representations. *Id.* at 377–78, 765 A.2d 587. The bankruptcy court, therefore, did not err in finding that Miller's conduct rendered his judgment debt nondischargeable under 11 U.S.C. § 523(a)(2)(A).

### B. 11 U.S.C. § 523(a)(4)

■■ To prove that a debt is nondischargeable under § 523(a)(4) "a creditor must prove the debtor committed (1) fraud or defalcation (2) while acting in a fiduciary capacity." *Pahlavi v. Ansari (In re Ansari)*, 113 F.3d 17, 20 (4th Cir.1997) (*citing* 11 U.S.C. § 523(a)(4)). Defalcation, for the purposes of § 523(a)(4), is a "mis-

appropriation of trust funds or money held in any fiduciary capacity; [or the] failure to properly account for such funds." *Id.* (*quoting In re Niles*, 106 F.3d 1456, 1460 (9th Cir.1997)).

■ Miller, while acting as Cigna's agent and fiduciary, "signed company checks to [Cigna] for installments due when in fact he had obtained the entire premiums." *Id.* at 384, 765 A.2d 587. Because Miller misappropriated money that he held in a fiduciary capacity for Cigna, the bankruptcy court did not err in finding that his judgment debt was nondischargeable under 11 U.S.C. § 523(a)(4).

### C. 11 U.S.C. § 523(a)(6)

■ Section 523(a)(6) excepts from discharge debts arising from willful and malicious injury by the debtor to another entity or to the property of another entity. 11 U.S.C. § 523(a)(6) (2004). Implied malice satisfies the malice standard of § 523(a)(6). *Hagan v. McNallen (In re McNallen)*, 62 F.3d 619, 625 (4th Cir.1995). Implied malice can be shown by the conduct of the debtor in the context of his or her surrounding circumstances. *Id.*

■ Miller "knowingly and intentionally breached his fiduciary duty to [Cigna]." *Ins. Co.*, 362 Md. at 385, 765 A.2d 587. By participating in the double financing scheme, Miller misappropriated funds that belonged to Cigna, depriving it of substantial premium payments. *Id.* at 384, 765 A.2d 587. When a debtor commits "an unauthorized exercise of dominion or control over property belonging to another that seriously interferes with the owner's rights," the debt resulting from his actions is nondischargeable under 11 U.S.C. § 523(a)(6). *Spinoso v. Heilman*, 241 B.R. 137, 171 (Bankr.D.Md.1999) (*citing First Nat'l Bank of Maryland v. Stanley (In re Stanley)*, 66 F.3d 664, 668 (4th Cir.1995)). Accordingly, the bankruptcy court did not err in finding that Miller's judgment debt was nondischargeable under 11 U.S.C. § 523(a)(6).

### D. Judicial Estoppel

Miller also argues that because Cigna charged him with negligence in its state case, it is judicially estopped from arguing that he acted with intent in its bankruptcy action. Appellant's Br. 28.

■ "[J]udicial estoppel exists to deter the use of facts from other litigation to manipulate a subsequent court that is unfamiliar with the prior factual positions assumed by the litigants." *Emergency One, Inc. v. Amer. Fire Eagle Engine Co., Inc.*, 332 F.3d 264, 274 (4th Cir.2003). For judicial estoppel to be applied, therefore, "the party sought to be estopped must be seeking to adopt a position that is inconsistent with a stance taken in prior litigation [and] the position sought to be estopped must be one of fact rather than law or legal theory." *1000 Friends of Maryland v. Browner*, 265 F.3d 216, 226–27 (4th Cir. 2001) (*quoting Lowery v. Stovall*, 92 F.3d 219, 224 (4th Cir.1996)) (internal quotation marks omitted).

■ Cigna "has not changed the facts from one forum to the next; ... [it] is merely presenting inconsistent legal theories, a practice that is not proscribed by judicial estoppel." *Folio v. City of Clarksburg*, 134 F.3d 1211, 1218 (4th Cir.1998).

### CONCLUSION

For the reasons discussed above, the decision of the bankruptcy court will be affirmed.

### ORDER

For the reasons discussed in the accompanying Memorandum Opinion, it is, this 17th day of June 2004, ORDERED that:

1. The Bankruptcy Court's decision that the Appellant's judgment debt is nondischargeable BE, and HEREBY IS, AFFIRMED; and

2. The Clerk of the Court shall send copies of this Memorandum Opinion and Order to counsel for the parties.